WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vantage Mobility International LLC, | No. CV-19-04684-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Kersey Mobility LLC, *et al.*, | |
| Defendants. | |

At issue are Defendant Braun Corporation's ("BraunAbility") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20, Mot.), to which Plaintiff Vantage Mobility International LLC ("VMI") filed a Response (Doc. 31, Resp.) and BraunAbility filed a Reply (Doc. 41, Reply); and BraunAbility's Motion for Leave to Supplement Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 40), to which VMI filed a Response (Doc. 44) and BraunAbility filed a Reply (Doc. 51). The Court heard oral argument on the Motions on October 17, 2019. (Docs. 74, 95.) In this Order, the Court will also resolve BraunAbility's Motion to Strike (Doc. 55).

**I.  BACKGROUND**

Plaintiff VMI is an Arizona company that produces and sells wheelchair-occupied, lowered-floor minivan conversions. Since 2011, Defendant Kersey Mobility LLC ("Kersey") has been an authorized dealer of VMI products in certain portions of the State of Washington. Kersey is made up of two members, Defendants Kersey Mobility Systems, Inc. and Jensen8, Inc. VMI alleges that Defendant Michael Kersey is the "sole governor"

of Kersey Mobility Systems, Inc. and Defendant Michael Jensen is a "governor" of Jensen8.

In 2017, VMI and Kersey entered into an Authorized Dealer Agreement for Kersey to sell VMI's manual equipment (Doc. 54-8), and a Select Dealer Agreement for Kersey to sell VMI's powered equipment (Doc. 54-9). A Territory and Location Policy attached to the Authorized Dealer Agreement provides that if Kersey wishes "to sell or cease operating one of more of [Kersey's] locations at or from which any or all of [VMI's] Products are sold," VMI has a right of notice, first offer, and first refusal. (Doc. 54-8 at 7.)

Defendant BraunAbility is an Indiana company that also produces and sells wheelchair-occupied, lowered-floor minivan conversions. VMI alleges that BraunAbility orchestrated the purchase of all of the membership interests in Kersey by one of its subsidiaries, Defendant Arch Channel Investments LLC, in June 2019, and that VMI stands to lose market share in Washington to BraunAbility, since Kersey is now owned by one of BraunAbility's subsidiaries. VMI claims that, by entering into the membership interest sale, Kersey breached its agreements with VMI (Count 1) and that Defendants' conduct constituted tortious interference with contractual relations (Count 2), unfair competition (Count 3), civil conspiracy (Count 4), and consumer fraud (Count 5). (Doc. 37, First Am. Compl. ("FAC").)

BraunAbility now moves to dismiss the claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II. LEGAL STANDARD

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction by challenging the plaintiff's

allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at

1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

## III. ANALYSIS

### A. General Jurisdiction

BraunAbility first argues that it is not subject to general personal jurisdiction in Arizona. (Mot. at 4-5.) As a threshold matter, because VMI filed the FAC after BraunAbility filed its Motion to Dismiss, the Court will consider VMI's allegations in the FAC in resolving the Motion to Dismiss. Conversely, in the interest of efficiency and in lieu of requiring the parties to re-brief the Motion to Dismiss, the Court will consider the Motion to Dismiss filed prior to the FAC but will grant BraunAbility's Motion for Leave to Supplement (Doc. 40) and consider BraunAbility's supplemental Declaration submitted after VMI filed the FAC (Doc. 40-1).

"[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction" over a corporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Under *International Shoe*, general or all-purpose jurisdiction over a corporation arises in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Id.* at 138 (quoting *Int'l Shoe Co.*, 326 U.S. at 318) (internal quotations omitted). It is not sufficient that a corporation simply "engages in a substantial, continuous, and systematic course of business" in the forum state; instead, general jurisdiction over a corporation exists only when the corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state." *Id.* at 127, 137-38 (internal quotations and citations omitted). Thus, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-

state contacts," but rather "calls for an appraisal of a corporation's activities in their entirety." *Id.* at 139 n.20. Ultimately, "a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*

In the FAC, VMI added an allegation that BraunAbility "operates five dealerships" in Arizona. (Doc. 38-1 ¶ 18.) In BraunAbility's supplemental Declaration, its General Counsel avers that, while the five Arizona dealerships sell BraunAbility products, they are owned and operated by Arch. (Doc. 40-1 ¶ 4.) Even if the Court takes as true that BraunAbility operates dealerships in Arizona, that allegation is insufficient to confer the Court with all-purpose jurisdiction over BraunAbility in Arizona. In the Affidavit BraunAbility filed with its Motion to Dismiss, its General Counsel avers that both the place of incorporation and principal place of business of BraunAbility are Indiana. Arizona contains none of its corporate management and fewer than 1% of its employees, and less than 1.5% of its revenue comes from Arizona. (Doc. 20-1 ¶¶ 7-9.) Even after considering Plaintiff's allegations that BraunAbility has conducted training, participated in disability conventions, and located a service facility in Arizona, the Court finds that BraunAbility's affiliations with Arizona are not so extensive as to render it essentially at home in Arizona when considering its activities in their entirety.[1] The Court thus does not have general jurisdiction over BraunAbility in Arizona.

### B. Specific Jurisdiction

BraunAbility also contends that it is not subject to specific personal jurisdiction in Arizona. (Mot. at 5-9.) Whether a court may exercise specific jurisdiction in a given case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate

---

[1] In its briefing (Resp. at 4-5), VMI applied a pre-*Daimler* standard for general personal jurisdiction over a corporation that focused on whether the defendant's contacts with the forum state were simply "substantial, continuous and systematic," which standard the *Daimler* Court characterized as "unacceptably grasping." 571 U.S. at 138.

some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

To meet the first element—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful direction analysis is most commonly applied in cases alleging tortious conduct, as in this case. *Mavrix Photo, Inc.*, 647 F.3d at 1228.

To determine whether the defendant's actions constitute purposeful direction, courts apply the "effects" test that was developed in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The effects test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the defendant *himself* creates with

the forum State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284.

BraunAbility argues that VMI has not demonstrated BraunAbility committed an intentional act aimed at Arizona because the purchase of the Kersey membership interests without VMI's knowledge—which underpins VMI's claims—was effectuated by Arch, not BraunAbility. (Mot. at 7.) BraunAbility also points out that VMI "pleads no grounds to ignore the corporate form between BraunAbility and Arch." (Mot. at 7.) But VMI does allege that "the Chief Executive Office of [BraunAbility], Staci Kroon, sent an email to VMI's Chief Executive Officer, Mark Shaughnessy, stating, 'As Mark Kersey shared with you earlier, BraunAbility has acquired his dealerships,'" which indicates that BraunAbility orchestrated Arch's purchase of Kersey. (FAC ¶ 43.) VMI also alleges that, on the day of Arch's purchase of Kersey, "Arch, acting at the direction of Braun, filed suit against VMI . . . claiming VMI's rights of first offer and first refusal do not apply to Arch's acquisition of Kersey and that such provisions were void and unenforceable." (FAC ¶ 45.) BraunAbility has not produced evidence challenging these allegations.

By themselves, these allegations go to whether BraunAbility engaged in intentional conduct leading to VMI's claims.[2] For example, in Count 2, VMI claims that BraunAbility engaged in tortious interference with contractual relations by "inducing Kersey to enter into an Agreement with Arch to acquire 100% of the membership interests in Kersey Mobility, LLC, without providing VMI notice of Kersey's intent to sell." (FAC ¶ 70.) Thus, VMI does not allege claims against BraunAbility based solely on the acts of Arch, but also on BraunAbility's own conduct.

Although VMI satisfactorily pleads that BraunAbility committed intentional acts giving rise VMI's claims, allegations going to whether those acts were expressly aimed at Arizona are inadequate.[3] At base, VMI's allegations of injury resulting from

---

[2] The Court does not resolve here whether VMI has stated claims under Rule 12(b)(6), but rather whether the allegations are sufficient to subject BraunAbility to personal jurisdiction in Arizona.

[3] In its briefing, VMI cites pre-*Walden* cases to argue that BraunAbility's conduct was aimed at Arizona because VMI is located in Arizona and the harm resulting from the

BraunAbility's alleged conduct relate to a loss of market share in the State of Washington. VMI does not claim that BraunAbility's actions hurt VMI in the Arizona market, and instead argues that the effects of a loss of sales in Washington will be felt in Arizona because VMI is located here.[4] In *Walden*, the Supreme Court clarified that a defendant's connection to the forum state through the plaintiff alone is insufficient to confer specific jurisdiction over the defendant. 571 U.S. at 290; *see also Burger King*, 471 U.S. at 474 (stating that the foreseeability of injury in a forum state "is not a sufficient benchmark for exercising personal jurisdiction" (internal quotations omitted)); *Morrill v. Scott Fin. Corp.*, 873 F. 3d 1136, 1144-45 (9th Cir. 2017). Without more, Plaintiff has failed to show purposeful direction on the part of BraunAbility and, as a result, the Court lacks specific personal jurisdiction over BraunAbility. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.").

### C. Motion to Strike

BraunAbility also filed a Motion to Strike (Doc. 55) related to paragraph 3 of the FAC. In that paragraph, VMI alleges that the United States Department of Justice conducted an antitrust inquiry into BraunAbility, which BraunAbility argues is untrue, immaterial, and scandalous. Because the Court is granting the Motion to Dismiss VMI's claims against BraunAbility for lack of personal jurisdiction, no allegations against BraunAbility will remain in this lawsuit. The Court will therefore deny the Motion to Strike as moot.

**IT IS THEREFORE ORDERED** granting Defendant Braun Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20) and dismissing Plaintiff's claims against Braun Corporation.

. . . .

---

conduct will be felt in Arizona. (Resp. at 7-8.)

[4] The FAC also contains broad allegations of anticompetitive behavior on a national scale by BraunAbility, but none of those allegations go to the specific claims raised by VMI in this lawsuit.

**IT IS FURTHER ORDERED** granting Defendant Braun Corporation's Motion for Leave to Supplement Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 40).

**IT IS FURTHER ORDERED** denying as moot Defendant Braun Corporation's Motion to Strike (Doc. 55).

Dated this 16th day of January, 2020.

_____
Honorable John J. Tuchi
United States District Judge