**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vantage Mobility International, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Kersey Mobility, LLC,<br><br>　　　　　　Defendant. | No. CV-19-04684-PHX-JJT<br><br>**ORDER** |

Pending before the Court is Kersey Mobility, LLC's ("Defendant" or "Kersey") "Motion to Compel Discovery Responses" (Doc. 179).[1] Vantage Mobility International, LLC ("Plaintiff" or "VMI") has filed a Response (Doc. 187), to which Defendant has replied (Doc. 198). After reviewing the parties' briefing, the Court does not find that oral argument is necessary. For the reasons explained herein, the Court will deny Defendant's Motion (Doc. 179).

## I. BACKGROUND

As recounted in the Court's January 24, 2020 and June 11, 2020 Orders:
> Plaintiff [Vantage Mobility International, LLC ("VMI")] is an Arizona company that produces and sells wheelchair-occupied, lowered-floor minivan conversions. Since 2011, Defendant [Kersey Mobility, LLC ("Kersey")] has been an authorized dealer of VMI products in certain portions

---
[1] On June 22, 2020, the District Judge referred to the undersigned the discovery dispute outlined in Defendant's Notice of Discovery Dispute (Doc. 172). (Doc. 173). The undersigned ordered full briefing. (Doc. 175).

of the State of Washington. Kersey is made up of two members, Defendants Kersey Mobility Systems, Inc. and Jensen8, Inc. VMI alleges that Defendant Michael Kersey is the "sole governor" of Kersey Mobility Systems, Inc. and Defendant Michael Jensen is a "governor" of Jensen8.

In 2017, VMI and Kersey entered into an Authorized Dealer Agreement for Kersey to sell VMI's manual equipment (Doc. 54-8, Auth. Dealer Agree.), and a Select Dealer Agreement for Kersey to sell VMI's powered equipment (Doc. 54-9, Select Dealer Agree.). Each Agreement includes separate Dealer Policies, and the Agreement and Policies together constitute "Dealer Relationship Documents (DRD)." A Territory and Location Policy attached to the Authorized Dealer Agreement provides that if Kersey wishes "to sell or cease operating one or more of [Kersey's] locations at or from which any or all of [VMI's] Products are sold," VMI has a right of notice, first offer, and first refusal. (Doc. 54-8 at 7, Location Policy.)

In November 2018, VMI added an Assignment and Change of Control Policy to the DRD as "governed by either the Select Dealer Agreement or the Authorized Dealer Agreement." (Doc. 54-10, Control Policy.) That Policy states that, without the prior written consent of VMI, Kersey may neither "assign any or all of its rights or delegate the performance of any or all of its duties and obligations" under the agreements with VMI nor transfer control of Kersey. The Policy purports to survive any termination of the associated Agreements. The parties dispute whether the Control Policy is enforceable against Kersey.

The Braun Corporation ("BraunAbility") is an Indiana company that also produces and sells wheelchair-occupied, lowered-floor minivan conversions and thus is a competitor of VMI. VMI alleges that BraunAbility orchestrated the purchase of all of Kersey's membership interests by one of BraunAbility's subsidiaries, Defendant Arch Channel Investments LLC ("Arch"), in June 2019, and that VMI stands to lose market share in Washington to BraunAbility, since Kersey is now owned by one of BraunAbility's subsidiaries. VMI claims that, by entering into the membership interest sale, Kersey breached its agreements with VMI (Count 1) and that Defendants' conduct constituted tortious interference with contractual relations (Count 2), unfair competition under

A.R.S. § 44-1402 (Count 3), civil conspiracy (Count 4), and consumer fraud under A.R.S. § 44- 1522 (Count 5). (Doc. 37, First Am. Compl. ("FAC").)

(Doc. 103 at 2-3; Doc. 168 at 1-2).

On August 14, 2019, Defendant BraunAbility filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20). The Court concluded that it did not have personal jurisdiction over Defendant BraunAbility and dismissed all claims against Defendant BraunAbility. (Doc. 102). The Court also granted in part a Motion to Dismiss (Doc. 48) filed by Defendant Kersey. The remaining claim is Plaintiff's claim against Defendant Kersey "for breach of the Control Policy as it pertains to the Authorized Dealer Agreement." (Doc. 103 at 16-17).

On April 20, 2020, Defendant filed a Notice of Discovery Dispute alleging that Plaintiff "has yet to provide a computation of each category of damages claimed against Kersey, much less a description of the documents or other evidentiary materials on which such damages are based, as required by the MIDP, hindering Kersey's efforts to prepare its defenses." (Doc. 127 at 2). In an April 27, 2020 Order, the Court noted that Plaintiff's disclosure merely consisted of a list of categories and a single figure of $10,000,000. (Doc. 135 at 1). The Court concluded that "[t]his is not a calculation, and it is inadequate notice to allow Defendant to prepare a defense to the damages aspect of the matter." (*Id.*). The Court required Plaintiff to file a supplemental disclosure remedying this deficiency no later than August 1, 2020.[2] (*Id.* at 3). The Court subsequently extended the deadline for Plaintiff to file an Amended Complaint and the associated discovery deadline to September 4, 2020. (Doc. 189).

In the pending Motion to Compel, Defendant asserts that Plaintiff "has never disclosed any factual basis for any of its alleged $10 million in damages in this case . . . only vague theories[.]" (Doc. 179 at 1) (emphasis in original). Defendant explains that it

---

[2] However, if Plaintiff moves to amend the First Amended Complaint prior to August 1, 2020, Plaintiff must file the supplemental disclosure contemporaneously with the motion to amend. (Doc. 135 at 3).

- 3 -

has pled several defenses "bearing directly on the questions of causation and damages in this case, and also contends that VMI cannot prove the elements of its claim, damages in particular." (*Id.* at 4). Defendant further explains that in attempt to bolster these defenses, it served discovery requests on Plaintiff on April 10, 2020. (*Id.*). Plaintiff's responses to those requests led to the instant discovery dispute concerning Interrogatory Nos. 1 and 4 and Request for Production ("RFP") Nos. 1-7.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b) governs the scope of discovery that may be obtained:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). A party may serve on any other party a request for production that is within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). A party may serve an interrogatory relating "to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

If a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). However, such payment must not be ordered if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; if "the opposing party's nondisclosure, response, or objection was substantially justified"; or if "other circumstances make an award of expenses unjust." *Id.*

- 4 -

### III. DISCUSSION

**A. Interrogatory No. 1**

Defendant's Interrogatory No. 1 states: "Describe the factual basis for your contention that the sale of Kersey's membership interests caused the damages you seek." (Doc. 179 at 4). Plaintiff responded as follows:

> The special relationship between manufacturer and dealer involving the sharing of sensitive business records and trade secrets, as well as maintaining the integrity of dealers selling VMI products, imposed on Kersey a fiduciary duty of the utmost loyalty to VMI. The Location and Control Policies were intended to maintain this fiduciary relationship between VMI and Kersey, such that VMI would be able to ensure any owner and/or operator of the authorized dealerships selling VMI products conducted itself with VMI's best interests in mind. By seeking out Braun and Arch to acquire all of its assets and liabilities, without providing VMI an opportunity to exercise its ROFO and ROFR, and without providing VMI an opportunity to consent to the acquisition, Kersey breached the Location and Control Policies, causing VMI actual and consequential damages. Specifically, Kersey's breaches resulting in its dealerships being managed and operated by VMI's number-one competitor has caused not only decreased purchase orders, retail sales, and shipments from Kersey, but also harm to VMI's business reputation and goodwill, diminished market share, decreased business value, and lost business opportunities. The full facts of regarding VMI's damages will be uncovered as discovery progresses in this matter, and VMI will supplement accordingly.

(Doc. 179-1 at 5-6; Doc. 187-3 at 5-6). The Court finds that Plaintiff's disclosure of its calculation of damages as required by the Court's April 27, 2020 Order (Doc. 135) and July 14, 2020 Order (Doc. 189) should necessarily contain the factual basis for its contention that the sale of Defendant's membership interests caused the damages Plaintiff seeks. Defendant's Motion to Compel (Doc. 179) is denied without prejudice as to Interrogatory No. 1.

**B. Interrogatory No. 4**

Defendant's Interrogatory No. 4 states:

> Identify from your records each sale by Kersey of an Authorized Product, from 2015 to the present, by including without limitation, for each sale, (1) the vehicle identification (VIN) number, (2) the date VMI delivered the vehicle to Kersey, (3) the date Kersey delivered the vehicle to an end user, if known, (4) VMI's cost of goods sold associated with the vehicle, (5) the total amount Kersey paid VMI for the vehicle, including any financing charges; and (6) VMI's net profits associated with the sale of each vehicle, including VMI's computation of its net profits.

(Doc. 179 at 4). In responding to Interrogatory No. 4, Plaintiff incorporated by reference a number of documents previously disclosed to Defendant. (Doc. 187-3 at 7). Plaintiff has also produced additional documents in response to Interrogatory No. 4. (*Id.*). In opposing Defendant's Motion to Compel, Plaintiff asserts that "whatever documents exist to respond to Interrogatory No. 4, Kersey has possession of them . . . ." (Doc. 187 at 5). Citing to Federal Rule of Civil Procedure 33(d), Plaintiff asserts that its "reference to documents containing the information requested is entirely appropriate." (*Id.* at 3). Defendant contends that to fully comply with Interrogatory No. 4, "VMI must ***explicitly identify*** each sale it contends that it made relevant to its lost sales claim, and its profits on such sales (along with the other information requested in Interrogatory No. 4) so that Kersey may compare what is known to Kersey with VMI's apparent different facts." (Doc. 198 at 4) (emphasis in original).

Federal Rule of Civil Procedure 33(d) allows the production of business records in response to an interrogatory where "the burden of deriving or ascertaining the answer will be substantially the same for either party." However, Rule 33(d) also requires that the responding party specify records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). "A requesting party claiming an inappropriate use of Rule 33(d) must make a prima facie showing that the use of Rule 33(d) is somehow inadequate, whether because the information is not fully contained in the documents or because it is too difficult to extract." *RSI Corp. v. Int'l Bus. Machines Corp.*, No. 08–CV–3414, 2012 WL 3095396, at

*1 (N.D. Cal. July 30, 2012) (internal citations and quotations omitted).

Plaintiff's response to Interrogatory No. 4 provides sufficient detail such that Defendants can ascertain the answer to the interrogatory. The Court finds that the burden of ascertaining the answer to Interrogatory No. 4 will be substantially the same for either party. As a result, the Court does not find Plaintiff's use of Rule 33(d) improper. Defendant's Motion to Compel (Doc. 179) will be denied as to Interrogatory No. 4.

**C. RFP Nos. 1-7**

Defendant's RFPs Nos. 1-7 state as follows:

- RFP No. 1: "All documents showing purchase orders, shipments, cost of goods sold, profit, profit margin, and retail data, for all dealers of VMI Manual Products, between 2015 and the present."

- RFP No. 2 states: "All documents showing sales leads, lead closing ratios, incentives, or other sales support, and all dealers of VMI Manual Products, between 2015 and the present."

- RFP No. 3: "All documents showing customer complaints, warranty claims, returns, and other indicators by which VMI measures dealer performance, for all dealers of VMI Manual Products, between 2015 and the present."

- RFP No. 4: "All documents showing VMI's direct-to consumer sales of wheelchair accessible vehicles, including direct sales through AMS Vans, between 2015 and the present, including documents showing the following: (1) all leads provided to AMS Vans; (2) AMS Vans' lead closing ratio; (3) the city and state of the individual or entity who purchased each vehicle; (4) the date each vehicle was delivered; (5) VMII's cost of goods sold for each vehicle; and (6) VMI's profits and profit margin for each vehicle, including VMI's computation of its profits."

- RFP No. 5: "All documents showing VMI's marketing of direct-to-consumer sales of VMI wheelchair accessible vehicles, including through pay-per click advertising and other search-engine optimization, and including direct sales through AMS Vans, between 2015 and the present."

- RFP No. 6: "All document showing all customer complaints about any VMI Manual Product between 2015 and the present."

- RFP No. 7: "All documents showing or referring to any agreement or understanding between VMI and/or AMS Vans and any wheelchair manufacturer or distributor regarding sales or marketing, including without limitation Numotion, between 2015 and the present."

(Doc. 179 at 4-5). Plaintiff produced some documents in response to RFP Nos. 1-7, but objected to further response on the basis that the RFPs are "overbroad, unduly burdensome, irrelevant to any party's claims or defenses, and disproportionate to the needs of the case." (Doc. 187-3 at 10-16). In its Motion to Compel, Defendant states that it "believes that there are several explanations for any purported drop in sales at Kersey that have nothing to do with the sale of Kersey's membership interests to Arch," such as (i) a drop in sales across VMI dealers, (ii) customer and dealer dissatisfaction with VMI's products, and (iii) the possibility that VMI "has cannibalized its own sales through its acquisition of AMS Vans, which sells VMI's conversions directly to consumers, including the same market where Kersey operates its dealerships." (Doc. 179 at 12). These theories are speculative, and the Court is persuaded that RFP Nos. 1-7 are overbroad and not proportional to the needs of the case. Defendant's Motion to Compel (Doc. 179) will be denied as to RFP Nos. 1-7.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** denying Defendant's "Motion to Compel Discovery Responses" (Doc. 179).

**IT IS FURTHER ORDERED** denying Defendant's request for attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(3)(B).[3]

Dated this 6th day of August, 2020.

_____
Eileen S. Willett
United States Magistrate Judge

---

[3] The Court will not order sanctions "when it finds that a position was substantially justified in that the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome." *Roberts v. Clark County School District*, 312 F.R.D. 594, 609 (D. Nev. 2016); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (stating that "the test for avoiding the imposition of attorney's fees for resisting discovery in district court is whether the resistance was substantially justified. To our knowledge, that has never been described as meaning justified to a high degree, but rather has been said to be satisfied if there is a genuine dispute, or if reasonable people could differ" as to the appropriateness of the contested action (citations omitted) (internal quotation marks omitted) (alteration in the original)).